Shirlene JOYNER, Plaintiff,

v.

A. James FILLION, individually, and in his official capacity as The Commissioner of the Revenue for the City of Portsmouth, Defendant.

No. CIV. A. 2:97cv284.

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 11, 1998.

Stephen Wainger, Robert Harriss Wood, Huff, Poole & Mahoney, Virginia Beach, VA, for Plaintiff.

Jeff Wayne Rosen, Adler, Rosen & Peters, P.C., Virginia Beach, VA, for Defendant.

## MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment. Plaintiff Shirlene Joyner brought this suit for compensatory and punitive damages claiming that A. James Fillion, individually and in his official capacity as Commissioner of the Revenue for the City of Portsmouth, harassed and discriminated against her in the workplace based on her race and retaliated against her for filing complaints with the Equal Employment Opportunity Commission ("EEOC"), in violation of 42 U.S.C. §§ 1981, and 2000e, *et seq.* (Title VII of the Civil Rights Act of 1964 and 1991) (hereinafter "Title VII"). Further, she seeks a remedy for common law wrongful discharge in violation of the Virginia Constitution. The parties have briefed the issues, and the Court has conducted a hearing. The motion is, therefore, ripe for decision. For the reasons that follow, the Court *GRANTS* the motion in part and *DENIES* the motion in part.

## I. PROCEDURAL HISTORY

On March 19, 1997, Plaintiff, Shirlene Joyner, brought what was originally a *pro se* action alleging that she was harassed, wrongfully suspended and discharged. Plaintiff filed a motion for the appointment of counsel on March 20, 1997. On April 17, 1997, Defendant filed a motion for an extension of time to respond to Plaintiff's complaint. The motion was granted on April 21, 1997. On April 21, 1997, the Court wrote a letter to Plaintiff indicating that the Court did not have funds to appoint counsel in this matter but advised Plaintiff that attorney Stephen Wainger had agreed to consult with her about the case. Defendant moved for summary judgment on May 16, 1997. On June 3, 1997, Plaintiff filed: (1) a motion for extension of time to file a brief in opposition to the motion for summary judgment; and (2) an affidavit from Mr. Wainger indicating, among

other things, that his firm had been retained to represent Plaintiff. On June 9, 1997, Plaintiff filed a brief response to the motion for summary judgment requesting discovery to facilitate a response. On June 13, 1997, the Court granted· Plaintiff a ten day extension of time. No further response was filed by the Plaintiff.

On June 12, 1997, Plaintiff filed an amended complaint. On June 27, 1997, Defendant filed a motion to strike the amended complaint pursuant to Federal Rule of Civil Procedure 15. On July 2, 1997, Plaintiff filed a brief in response to the motion to strike. On July 3, 1997, Defendant replied to Plaintiff's response. On July 15, 1997, the Court denied the City of Portsmouth's motion to strike the amended complaint and declined to rule on the pending motion for summary judgment in order to give the Defendant the opportunity to address the amended complaint in an amended motion for summary judgment. On August 4, 1997, the City of Portsmouth filed an amended motion for summary judgment and Plaintiff filed a brief in opposition to the City's amended motion for summary judgment. Defendant filed a reply brief to Plaintiff's opposition to the motion for summary judgment. On December 30, 1997, the Court heard oral argument on the motions as aforestated.

## II. FACTS

The undisputed facts are concisely stated. Defendant A. James Fillion is the Commissioner of Revenue for the City of Portsmouth. The office employs approximately twenty-eight persons. In 1992, Plaintiff, Shirlene Joyner, began her employment in the Office of the Commissioner of Revenue for the City of Portsmouth on a part-time basis. Based on her excellent work record, she was offered and she accepted, a full-time position beginning February 1, 1994. She remained in that position until she was terminated September 21, 1995 for reasons which are disputed.

For the period from February 1, 1994, through approximately August 1994, Joyner received a performance evaluation indicating

that her work generally met expectations. On April 11, 1995, Joyner filed an administrative charge with the EEOC alleging gender and racial bias in her workplace. On April 26, 1995, Joyner received a notice of disciplinary action and was suspended for ten (10) days without pay, to begin April 26, 1995 and end May 4, 1995. The notice of disciplinary action form recited that Joyner's behavior during the preceding weeks represented violations of the Standards of Conduct for employees of the City of Portsmouth and listed the alleged infractions. On May 2, 1995, Joyner filed a second charge with the EEOC claiming her suspension was retaliation for her filing an EEOC charge. On September 22, 1995, Plaintiff's yearly performance evaluation was prepared. It indicated that her performance was below expectations. On October 3, 1995, Defendant notified Joyner that her employment was terminated effective September 21, 1995 for continuous unsatisfactory job performance including poor attendance, poor job performance, and unprofessional behavior with co-workers and citizens. In March 1996 this lawsuit was filed.[1]

### III. LEGAL STANDARD

Summary judgment is appropriate when the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once a party has properly submitted evidence supporting the motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), the burden shifts to the nonmoving party to set forth specific facts showing genuine issues for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *accord Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). "[T]he plain language of Rule 56 mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. The court must view the record as a whole and in the light most favorable to the nonmoving party. *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*, 763 F.2d 604, 610 (4th Cir.1985).

### IV. DISCUSSION

#### A. Hostile Work Environment Claim

The race standard "is the same standard now used when determining whether sexual harassment renders a work environment hostile." *Burlington Industries, Inc. v. Ellerth*, —— U.S. ——, ——, 118 S.Ct. 2257, 2272, 141 L.Ed.2d 633 (1998)(Thomas, J., dissenting.). Accordingly, Plaintiff must prove the following four standards enumerated in *Harris v. Forklift Systems:* (1) the conduct to which she was subjected was unwelcome; (2) the harassment was based on sex or race; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) there is some basis for imposing liability on the employer. 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *See Swentek v. USAIR*, 830 F.2d 552, 557 (4th Cir.1987). The work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so, in order to comply with the statutory requisites. *Faragher*, 118 S.Ct. 2275 (citing *Harris*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). To ascertain "hostility" or "abusiveness," the court considers four factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct is physically threatening or humiliating, as opposed to merely offensive; and, (4) whether it unreasonably interferes with the claimant's performance. *Id.*

To sustain her burden of proof of a racially hostile work environment, Plaintiff must prove "that [her] work environment

---

1. Plaintiff agrees with Defendant that Defendant Fillion, as a supervisor, may not be sued under Title VII. This Court and others have held otherwise. *See, e.g., Shoemaker v. Metro Information Services*, 910 F.Supp. 259 (E.D.Va.1996). The Court finds, however, that Fillion may not be held liable in his individual capacity because there are no facts in the record to support individual liability.

was so pervaded by racial harassment as to alter the terms and conditions of [her] employment." *Burlington Industries, Inc. v. Ellerth,* —— U.S. ——, ——, 118 S.Ct. 2257, 2272, 141 L.Ed.2d 633 (1998)(Thomas, J., dissenting.); See *Snell v. Suffolk Cty.,* 782 F.2d 1094, 1103 (2d Cir.1986), in which the Court held that "to establish a hostile atmosphere, ... plaintiffs must prove more than a few isolated incidents of racial enmity"; *accord, Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1257 (8th Cir.1981) (holding that there is no violation of Title VII due to infrequent use of racial slurs). In *Faragher v. City of Boca Raton,* the Court has held that " 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." —— U.S. ——, ——, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998)(citing *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971)where the court held that the "mere utterance of·an ethnic or racial epithet which engenders offensive feelings in an employee" fails to sufficiently alter the conditions of employment enough to violate Title VII).

■ With respect to the fourth prong of the *Harris* standard, an employer cannot be held liable for discriminatory conduct of its subordinates unless the employer knew or should have known of the harassment and took no action to effectively correct the situation. *Spicer v. Com. of Virginia Department of Corrections,* 66 F.3d 705, 710 (4th ·Cir. 1995); *accord Andrade v. Mayfair Management, Inc.,* 88 F.3d 258, 261 (4th Cir.1996) (holding that supervisory employee's sexual harassment of former employee was not automatically imputable to employer). As to the analytical predicate concerning the conduct of the subordinate, a plaintiff must demonstrate that the workplace would reasonably be perceived, and was perceived, as hostile and abusive. *Harris,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The Fourth Circuit has held· that ·"Title VII is not a federal guarantee of refinement and sophistication in the workplace ... it prohibits only

harassing behavior that is so severe or pervasive as to render the workplace objectively hostile or abusive." *Hartsell v. Duplex Products, Inc.,* 123 F.3d 766, 773 (4th Cir. 1997).

■ Plaintiff raises several allegations of harassment: (1) she was required to make coffee and wash pots while some white employees were not; (2) one of her fellow white employees used a black doll to ridicule her; (3) her supervisor made certain comments to her based on race; (4) she was required to stay after work and do administrative work at the counter, and (5) a supervisor pointed her out to certain police officials who visited the office because her son had legal problems with the police.

Defendant disputes the seriousness and pervasiveness of these incidents. Defendant contends that Plaintiff's claim of workplace harassment consists of a series of isolated and limited incidents. Responding to Joyner's claims serially, Defendant states (1) that kitchen duties were handled voluntarily by employees and that most employees signed up for a particular week without regard to whether they drank coffee; (2) that Plaintiff asked Austin, the alleged offending white employee, if she could take the black doll home and never complained to her supervisors about the doll; (3) that in the April 7, 1995 meeting with Joyner, the supervisors merely reminded Joyner of her troublesome conduct and performance problems; (4) that, when first hired, all employees spend considerable time at the counter and later combine desk work with counter work; and (5) that Joyner has offered nothing but her allegation that she was harassed because of her son's legal problems. Additionally, Defendant argues that because Joyner did not raise the final claim in her EEOC charge, she cannot now raise the allegation of harassment regarding her son. (Defendant's Memorandum in Support of Amended Motion for Summary Judgment, pp. 11–13.) [2]

2. The Court disagrees with Defendant's contention. The Court finds that the allegation regarding harassment because of her son is merely part of the conduct in the work environment about which she complains. This conduct could have been reasonably covered in any detailed EEOC investigation. *See,* infra footnote 3.

In response, Joyner maintains that she was directed to sign up for kitchen duties. Further, she maintains that she was told that all employees had to participate and Joyner claims that she was verbally abused by a white employee in front of other co-workers when she refused to sign up. Regarding the black doll, Joyner argues that beginning in December 1994, Austin, a white co-worker who was a tax assessor, placed the doll on his desk and referred to it several times a week, or sometimes a day, in a manner that ridiculed or insulted her in the presence of her supervisors. She requested that Austin cease ridiculing her but he did not. Supervisor McLean simply laughed at Austin's antics. In January 1995, Austin held up the doll and compared the doll to Joyner who he later said would go home and get drunk. When Joyner asked him the reason he made the latter comment, he said, "that is what all black women do". She denies that she asked to take the doll home. (Joyner, Depo., pp. 39, 42). Joyner also counters Defendant's contention that the incidents about which Joyner complains are " *trivial,*" *as are other allegations of harassment which the Court need not reach.*

Nevertheless, Defendant asserts that it (he) cannot be held liable because Plaintiff's supervisors had no knowledge of the alleged harassment. It is further asserted that Joyner did not complain to her supervisors. (Brief in Opposition, pp. 12–13.) This argument is unavailing. In view of Joyner's claim that her supervisors were present during the alleged harassment, she did not need to bring the complaints to their attention. In *Faragher,* the Court found that "combined knowledge and inaction may be seen as demonstrable negligence, or as the employer's adoption of the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy." —— U.S. ——, ——, 118 S.Ct. 2275, 2284, 141 L.Ed.2d 662. Further, if the harassment was indeed pervasive, it may be inferred that the employer had knowledge of the harassment. *See EEOC v. Hacienda Hotel,* 881 F.2d 1504, 1516 (9th Cir.1989) (cited in *Faragher* —— U.S. ——, 118 S.Ct. at 2284) (holding employer liable where manager did not respond to complaints about harassment by

supervisor); *Hall v. Gus Construction Co.,* 842 F.2d 1010, 1016 (8th Cir.1988) (finding employer liable where supervisor knew of harassment but did nothing); *Katz v. Dole,* 709 F.2d 251, 256 (4th Cir.1983) (holding that an employer can be liable when an employee specifically complains to her supervisor). Knowledge of workplace misconduct may be imputed to an employer by circumstantial evidence where the conduct is shown to be so sufficiently pervasive or repetitive that a reasonable employer would be aware of the conduct. *Reinhold v. Commonwealth of Virginia,* 135 F.3d 920, 929 (4th Cir.1998)(citing *Spicer,* 66 F.3d 705, 710). If her allegations of harassment are ultimately proven, there is an adequate basis for imposing liability on the employer as the Defendant should have known of the alleged.

The Court finds that summary judgment would not be appropriate on this claim of hostile work environment. Through the pleadings and her deposition Joyner has raised genuine issues of material facts regarding whether the conduct was welcome, whether the conduct was based on race, and the severity and pervasiveness of the conduct. Accordingly, summary judgement is *DENIED* on this claim.

### B. Retaliatory Discharge Claim

In order to succeed on the Title VII claim based on retaliation, the Plaintiff must establish a *prima facie* case of retaliation by a preponderance of the evidence. A prima facie case consists of three elements: (1) the plaintiff engaged in protected activity; (2) the employer took adverse employment action against the employee; (3) and a causal connection existed between the protected activity and the adverse action. *Hopkins v. Baltimore Gas and Electric, Co.,* 77 F.3d 745, 754 (4th Cir.1996); *See McNairn v. Sullivan,* 929 F.2d 974, 980 (4th Cir.1991); *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985) (applying the sequence of proof and burdens set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and com-

paring discriminatory treatment claims under Title VII to those arising out of a claim of retaliation); *Adams v. Frank,* 712 F.Supp. 74, 77 (E.D.Va.1989). "As in disparate treatment cases, the burden of establishing a prima facie retaliation case is not onerous." *Ross,* 759 F.2d 355 *(quoting Burdine* at 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207). Once the plaintiff has established a prima facie case, the burden shifts to the employer to produce a legitimate nondiscriminatory reason for 'the adverse act, thereby rebutting the presumption of retaliation. *Adams,* 712 F.Supp. at 77 (citing *Burdine,* at 450 U.S. at 254–55, 101 S.Ct. 1089). Lastly, if the employer produces a legitimate nondiscriminatory reason why it took the adverse action, the plaintiff must prove "by a preponderance of the evidence that the defendant's stated reason was pretext for discriminatory actions." *Id.* (citing *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089). To show that the employer's stated reason is pretextual, the plaintiff may present direct evidence of retaliation or demonstrate "that the stated reason is 'unworthy of credence.'" *Id. See also Lawrence v. Mars, Inc.,* 955 F.2d 902, 906 (4th Cir.1992), *cert. denied,* 506 U.S. 823, 113 S.Ct. 76, 121 L.Ed.2d 40 (1992) (reaffirming the required elements of a prima facie case of retaliation set out in *Ross,* and that the sequence of proof laid out in *McDonnell–Douglas* is applicable in retaliation cases under Title VII). Finally, an employer may be held liable for a discriminatory discharge by supervisory personnel, "whether or not the employer knew, should have known, or approved of the supervisor's actions." *Faragher,* —— U.S. ——, 118 S.Ct. at 2284 (citing *Meritor,* 477 U.S. at 70–71, 106 S.Ct. at 2407–2408).

■ In this case, Plaintiff has proven a prima facie case of retaliatory discrimination. First, Plaintiff established that she engaged in protected activity by filing EEOC complaints on April 10, 1995, and May 1, 1995. Second, she established that adverse employment action was taken against her when she was suspended on April 26, 1995 and later terminated on September 21, 1995.[3] Third, the Plaintiff presented evidence showing a causal connection between her filing of the EEOC complaints and her suspension. Essential to establish the causal link is that the employer must be aware that the employee engaged in the protected conduct. *Cohen v. Fred Meyer, Inc.* 686 F.2d 793, 796 (9th Cir.1982); *See also Ross, supra,* at 365 n. 9. Here, it is apparent that Defendant was aware that Plaintiff had filed EEOC complaints against his office. In fact, Plaintiff complained that she was present when Defendant and a supervisor were discussing the response to her EEOC complaint. The Court finds sufficient evidence to establish a causal connection between Plaintiff's filing EEOC complaints and her suspension. While the proof far from conclusively establishes the requisite casual connection, it certainly satisfies the less onerous burden of making a *prima facie* case. *Williams v. Cerberonics, Inc.* 871 F.2d 452, 457, (4th Cir.1989).

■ As its legitimate, non-discriminatory reason for suspending and later terminating Joyner, Fillion cited several violations of the standards of conduct for Portsmouth City employees. For the suspension the reasons included:

1. Disruptive behavior.

---

3. Defendant argues that the Court must disregard Joyner's allegations regarding her termination and that several other allegations involving the display of the Black doll, making coffee, and her co-employees and supervisors' conduct toward her are inappropriate in the complaint because these matters were not raised in the administrative charge. The Court cannot agree. The Court finds that Joyner's complaint about her termination and other matters Defendant seeks to exclude are "reasonably related to the allegations and claims in the administrative charge" and could reasonably be expected to follow from the administrative investigation. *See Nicol v. Imagematrix, Inc.* 767 F.Supp. 744. 753, (E.D.Va.1991). Furthermore, the "judicial suit may be as broad as the facts developed in a reasonable investigation of the charge will warrant." *EEOC v. General Electric Co.,* 532 F.2d 359, 366 (4th Cir.1976). It defies reason that the EEOC would conduct an investigation of Joyner's complaint regarding alleged gender and race bias in her work environment without considering her entire work history to include events in the work place which potentially impacted on her job performance and termination.

2. Failure to follow supervisor's instructions and otherwise comply with applicable established office policy.

3. Failure to give proper notice to supervisor in regard to being absent from work and being absent from work without proper notification.

4. Failure to keep appointment with Employee Assistance Program.

5. Overt or implied threats to employees or supervisor, whether intentional or not.

6. Failure to bring a doctor's excuse for days absent.

7. Failure to accept corrective actions from immediate supervisor.

(Defendant's Memorandum of Law in Support of Amended Motion for Summary Judgment, Exhibit, K). Defendant based Joyner's termination on September 21, 1995, on her poor attendance, poor job performance and unprofessional behavior with co-workers and citizens. (Def., Amended Motion, Exhibit L.)

Joyner claims that the reasons Defendant has offered for her suspension and termination are pretextual. Viewing the record as a whole and in a light most favorable to Joyner, the Court finds that genuine issues of material fact exist regarding the Defendant's reason for suspension and termination of Joyner. To rebut the reasons offered for her suspension and termination, Joyner relies on her verified complaint, depositions, and documents of record.

Joyner contends that the Defendant's reason for disciplining her is pretextual because he departed from established disciplinary procedures to discipline her, which Defendant has admitted, and the purported bases for the discipline are false. The record contains some support for her contentions. She was not given a written warning before her suspension (Fillion Depo., p. 22.); she had no opportunity to respond to the suspension; and the penalties for her alleged conduct were more drastic than disciplinary procedures warranted. ( Plaintiff's Brief in Opposition to the Amended Motion for Summary Judgment, pp. 12–15.)

More importantly, some of the grounds on which Defendant bases his discipline of Joyner are either nonexistent or of questionable value. She was disciplined for her job absences; however, Joyner offers leave slips which Newsome, her immediate supervisor, approved for the leave. Based on Joyner's absences of April 11 and 13, 1995, Defendant prepared a "Mandatory Supervisor's Referral Form" for the Employee Assistance Program for Joyner. Joyner did not go to the appointment. However, Joyner testified at her deposition that she had never been told of an appointment with the Employee Assistance program. Further, Joyner's signature is not on the referral form to reflect her receipt or acknowledgment of the form. (Plaintiff Brief in Opposition, p. 10). Another ground for Joyner's discipline was that she made overt or implied threats to employees. According to Joyner, the alleged threat was made on March 17, 1995. Joyner was not disciplined regarding this alleged threat until April 26, 1995, after she filed an EEOC charge. One of Joyner's supervisors, Nixon, testified that Joyner never showed any tendency toward violence or insulting behavior. (Nixon Depo., 11–13). In her deposition Joyner denied that she threatened anyone. (Joyner, Depo., pp. 87–90)

Joyner has also presented a challenge to other grounds Defendant claims for her discipline. The Court does not need to explore the facts underlying each ground for discipline Defendant has offered. The Court finds that Joyner has shown that there are genuine issues of material fact regarding the legitimate nondiscriminatory reasons Defendant presents as a basis for her suspension and termination. Therefore, the motion for summary judgment on the retaliatory discharge claim is *DENIED.*

## C. 1981 Discrimination Claim

■ To prove that the defendant violated Title 42 U.S.C. Section 1981, the plaintiff must prove that (1) she belongs to a racial minority; (2) that she was engaged in conduct comparable to employees outside of the protected groups; and (3) that the adverse employment action about which she complains was not taken with regard to similar

situated employees outside her protected class. *Cook v. CSX Transportation Corp.,* 988 F.2d 507, 510 (4th Cir.1993).

■ The Defendant argues that nothing in Plaintiff's complaint supports her claim that she was engaged in conduct comparable to employees outside of the protected groups or that similarly situated white employees were treated differently. Additionally, Defendant argues that, assuming Plaintiff has established a prima facie case, Defendant has met his burden of offering a legitimate, non-discriminatory reason for Plaintiff's suspension and termination. Finally, Defendant claims that Joyner has offered nothing to counter Defendant's proof of a legitimate non-discriminatory . reason supporting her suspension and termination. (Defendant's Memorandum of Law in Support of Amended Motion for Summary Judgment, pp. 14–15.)

Joyner counters that Defendant purposefully discriminated against her on the basis of race, in violation of 42 U.S.C. § 1981, by interfering with her employment position and denying her the benefits, privileges, terms and conditions of employment when he suspended and discharged her, a black female and a member of the protected class of persons. Joyner further contends that the Federal Rules of Civil Procedure only require "notice" pleading, and the above allegations adequately put Defendant on notice of the claim against it and there is factual support in the record for Joyner's claim. (Plaintiff's Brief in Opposition to Amended Motion for Summary Judgment, p. 25–26; Amended Complaint, Section 66.)

Viewing the record as a whole and in light favorable to Joyner, the Court finds that Joyner has failed to establish a prima facie violation of her rights under Title 42 U.S.C. § 1981. She has shown that she is a black female, a member of a racial minority. However, on the second element, she has not met her burden to show that she was engaged in conduct comparable to employees outside of the protected group; here, that group is white employees. Joyner has merely offered the Court conclusory statements that in no way meet her burden. This shortcoming alone is sufficient to grant summary in favor of the defendant.

Similarly, regarding the third element, Joyner failed to offer proof of any conduct of white employees comparable to her conduct for which white employees were disciplined less severely or not at all. Joyner only offers the Court that white employees also chewed gum and put on make-up. This evidence is not helpful because the Defendant claims Joyner was suspended and later terminated for, among other conduct, poor job performance and poor attendance. The record is silent as to the nature of disciplinary measures, if any, meted out to white employees who had comparable poor job performance, poor attendance and the other problems listed as the grounds for Joyner's suspension and later termination. Accordingly, Defendant's motion for summary judgment on Joyner's Section 1981 claim is *GRANTED.*

### D. Common Law Wrongful Discharge Claim

■ Joyner alleges that Defendant, in both his individual and official capacities, wrongfully and tortiously discharged and discriminated against her on the basis of her race, in violation of the public policy of the Commonwealth of Virginia which prohibits unlawful discrimination on the basis of race and in retaliation for her filing charges with the EEOC. Defendant argues that Joyner has failed to identify any statute upon which she bases her *Bowman* wrongful discharge claim and that her claim must fail as a matter of law.

Joyner responds that her claim of race harassment and unlawful discharge were in violation of the Virginia Code and Art. I, Section 11 of the Virginia Constitution. Article I, Section 11 of the Virginia Constitution provides that "the right to be free from any governmental discrimination upon the basis of religious conviction, race, color, sex, or national origin shall not be abridged ...". Joyner further relies on Virginia Code, Section 15.1–48.1 which provides that "it shall be an unlawful employment practice for a constitutional officer: (1) To fail or refuse to appoint or hire or to discharge any individual or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions or privileges of employment because of such individual's race....." (Va.Code Section 15.1–48.1, repealed effective Dec. 1997.) However, Defendant maintains that the Virginia Constitution and Virginia Code do not offer support for a wrongful discharge claim. (Defendant's Reply to Plaintiff's opposition to motion for summary judgment. p 11). The Court agrees.

In *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985), the Supreme Court of Virginia recognized a "public policy" exception to Virginia's common law employment-at-will doctrine when employee-shareholders of a bank were fired in retaliation for their exercise of their shareholder voting rights contrary to the wishes of the president of the bank. *Id.* 331 S.E.2d at 798–99. Finding that the threat of discharge undermined the shareholder's rights to vote their stock freely, the Supreme Court of Virginia permitted the discharged employees to prosecute an action in tort for wrongful termination. *Id.* 331 S.E.2d at 801. The court found the bank's actions in violation of the public policy underlying Virginia's securities laws. *Id.*

Since *Bowman*, all subsequent Supreme Court of Virginia cases upholding wrongful discharge claims have rested on the basis of statutes which, in their text, announce public policies. *See, e.g., Lockhart v. Commonwealth Education Systems*, 247 Va. 98, 439 S.E.2d 328 (1994); *Bradick v. Grumman Data Systems Corp.*, 486 S.E.2d 545 (Va. 1997). In *Lawrence Chrysler Plymouth Corp. v. Brooks*, 465 S.E.2d 806 (Va.1996), the court rejected the plaintiff's wrongful discharge claim where the former employee failed to identify the specific statute establishing the public policy allegedly violated.

Plaintiffs have searched innovatively for Virginia statutes which articulate Virginia public policy in which to ground *Bowman* claims. In *Doss v. Jamco, Inc.*, 492 S.E.2d 441 (Va.1997), the Supreme Court of Virginia held that the Virginia General Assembly legislative amendments prohibit wrongful discharge claims based on the Virginia Human Rights Act (VHRA). In *McCarthy v. Texas Instruments, Inc.*, 999 F.Supp. 823 (E.D.Va. 1998), an employee of the defendant brought a sex discrimination suit for wrongful termination from her job in violation of Virginia's public policy against gender discrimination. The plaintiff cited the Virginia Constitution, a local ordinance, and Title VII (*a federal statute was inapplicable*) as sources of that policy. The Court held that the plaintiff could not rely on the Virginia Constitution, Title VII, or a local human rights ordinance to support her *Bowman* claim for sex discrimination, as the underlying public policy was also found in VHRA. The Court found that as explained in *Doss*, 492 S.E.2d 441, the Virginia General Assembly plainly manifested its intention to alter the common law rule with respect to causes of action based upon the public policies reflected in the VHRA. *See also Williamson v. Virginia First Savings Bank*, No. 3:98CV38, 1998 U.S. Dist. LEXIS 6709 (E.D.Va. April 27, 1998) (where plaintiff fired after excess work absences to care for her children alleged she was fired in violation of public policies in the Virginia Fair Employment Contracting Act (VFECA), V.A.Code Section 2.1–374 and Article 1, Section 11 of the Virginia Constitution. The Court held that VFECA and the Virginia Constitution could not support a *Bowman* claim. The Court reasoned that since the anti-discrimination policy the plaintiff relied on in VFECA and the Virginia constitution also can be found in the VHRA, the plaintiff could establish a *Bowman* claim.)

Here, Plaintiff relies on the Virginia Constitution and Code of Virginia to support her common law wrongful discharge claim. It is clear to the Court that the public policy as reflected in the Code of Virginia and Article 1, Section 11 of the Virginia Constitution is also reflected in the VHRA. Therefore, the Court finds that the Virginia Constitution and Virginia Code cannot provide the underlying public policy to support Joyner's *Bowman* wrongful discharge claim.

Accordingly, since Joyner has failed to identify a statute which articulates public policy on which she can base her Bowman claim, Defendant's motion for summary judgment is ***GRANTED.***

### E. Damages

 Among other relief claims against the Defendant, Joyner seeks $1,000,000.00 in "compensatory, pecuniary and punitive damages ..." Defendant contends that the damages request is inappropriate and excessive. The Court finds that in the Civil Rights Act of 1991 there is support for Defendant's position. The Civil Rights Act of 1991 provides in pertinent part as follows:

> The sum of the amount of compensatory damages awarded under this section......shall not exceed, for each complaining party—(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000.

42 U.S.C. § 1981(b)(3)(A). The statute further provides that:

> A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices...

42 U.S.C. § 1981(b)(1)

The undisputed evidence is that the Defendant Fillion, Commissioner of the Revenue for the City of Portsmouth, employs approximately twenty-eight (28) employees. (Affidavit of A. James Fillion). It therefore follows that the Civil Rights Act of 1991 limits Joyner's recovery on her Title VII claims which remain to $50,000. Defendant's motion to limit compensatory damages to $50,000 is **GRANTED.**

 The Civil Rights Act of 1991 also exempts "a government, government agency or political subdivision" from punitive damages. 42 U.S.C. § 1981a(b)(1); *see Beth v. Espy*, 854 F.Supp. 735, 736–737 (D.Kan.1994) (holding that exemption for punitive damages against government includes Secretary of Agriculture). The Office of the Commissioner of the Revenue for the City of Portsmouth is a government agency. As a result, Joyner may not recover punitive damages under the statute. The Court has dismissed all other claims on which Joyner could have recovered punitive damages if she had prevailed. (*See, supra* Sections III. C. and D). Moreover, the Defendant is not being sued in his personal capacity on the remaining Title VII claims. Accordingly, Defendant's motion to dismiss the punitive damages claim is likewise **GRANTED.**

### V. CONCLUSION

For the foregoing reasons, summary judgment is **DENIED** on Count I (Title VII, Hostile Work Environment) and Count II (Title VII, Retaliatory Discharge). Summary judgment is **GRANTED** on Count III (Title 42 U.S.C. § 1981) and Count IV (Common Law Wrongful Discharge). Additionally, Defendant Fillion is **DISMISSED** as a defendant in his individual capacity on Counts I and II. Finally, compensatory damages are limited to $50,000.00 and Plaintiff's request for punitive damages is **DENIED.**

It is so **ORDERED.**