**David G. LAMB, Plaintiff,**

v.

**QUALEX, INC., Defendant.**

**No. Civ.A. 3:98CV413.**

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 16, 1998.

Bradley Phipps Marrs, Meyer, Goergen & Marrs, Richmond, VA, Robert Latane Wise, Meyer, Goergen & Marrs, Richmond, VA, for David G. Lamb, plaintiff.

Paul Michael Thompson, Hunton & Williams, Edwin Francis Farren, IV, Hunton & Williams, Richmond, VA, for Qualex, Inc., defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This is an employment discrimination case brought under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"), and Virginia common law. The matter is before the Court on the defendant's motion for summary judgment. Summary judgment may be granted if, after consideration of such items as depositions, affidavits or certifications, and after viewing the facts in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). For the reasons stated below, the Court GRANTS defendant's motion for summary judgment on all counts of plaintiff's complaint.

### FACTS

Defendant Qualex, Inc. ("Qualex") is a subsidiary of Kodak. Qualex leases film development equipment to retail businesses such as drug stores. Retailers operate this equipment with their own employees. Qualex provides the retailers training, operational and technical support. Qualex manages these retail sites through Account Development Specialists ("ADS") who are responsible for an assigned geographic territory. All ADSs are full-time employees. Each ADS is expected to respond to customer support requirements as needed. Qualex provides each ADS a car and computer to service his or her retailers.

Plaintiff David Lamb ("Lamb") was an ADS for Qualex. He began work on December 2, 1996. Qualex initially assigned Lamb a territory comprised of most of Virginia and West Virginia. It initially included thirty-eight stores. More were quickly added. Lamb's performance through his training and initial period of employment was satisfactory, if not exemplary. Lamb was assigned to mentor another ADS, he advanced through several stages of a competitive selection process for a promotion, and appears to have been assigned a large number of stores in a broad geographic area.

However, within months of assuming his duties as ADS. Lamb began to suffer a variety of health problems. Lamb took sick leave from February 4, 1997 to February 10, 1997 for a reason not apparent from the record. He was hospitalized from April 2, 1997 to April 6, 1997 for treatment of kidney stones and renal failure. He recuperated on sick leave until May 6, 1997. During the same general time period, Lamb obtained treatment from a licensed clinical social worker who treated him for depression. Lamb's depression prevented him from performing his normal ADS duties after June 3, 1997. On June 17, 1997 Lamb's physician provided Qualex a letter stating that Lamb was "medically disabled from any type of gainful employment" and that the duration of his disability was "unknown[,]" but expected to be "on the order of 60–90 days." In response, Qualex placed Lamb on short term disability leave effective June 17, 1998. Qualex informed Lamb that it could not guarantee his position would be held open while on leave and that Lamb could not return to work without clearance from his physicians.

After granting Lamb short term disability leave, Qualex divided Lamb's territory and hired two ADSs to fill the positions. Shortly thereafter, Lamb's social worker informed Qualex that Lamb's prescription drug regimen would allow him to return to work on what would initially be a part-time basis beginning in August, 1997. Qualex responded by noting that it had no part-time ADS positions. On September 9, 1997 Lamb requested that Qualex allow him to return to work as a part-time ADS managing some of the accounts from his former territory. On September 22, 1997. Lamb's physician provided Qualex a letter that stated "Mr. Lamb has been advised to resume his job on a part-time basis only." The letter was circulated within Qualex for several days. On September 26, 1997, hours after viewing the letter for the first time, the Director of Human Resources for Qualex wrote Lamb and terminated his employment.

On September 19, 1997, and without Qualex' knowledge, Lamb applied to the Social Security Administration ("SSA") for total disability benefits. In his application, Lamb claimed that "[I] became unable to work because of my disabling condition on April 2, 1997." On September 22, 1997, Lamb completed an SSA Disability Report stating that he was "unable to complete all aspects of the job. Required time off—unscheduled." The SSA initially denied Lamb's application for benefits. He submitted a Request for Reconsideration on December 11, 1997 stating "I believe that I am disabled because of my depression which is major and severe and is affecting everything in my life. I am unable to work." The SSA reversed its initial denial and awarded Lamb monthly disability benefits effective April 2, 1997.

### Legal Analysis

Lamb's complaint challenges the legality of his termination and the events preceding it. Counts I through IV of the complaint all allege violations of the ADA. Count I of the Complaint alleges that Qualex terminated Lamb because of his disability. Count II alleges that Qualex discriminated against Lamb by failing to reasonably accommodate his disability. Count III alleges that Qualex terminated Lamb in an effort to avoid making reasonable accommodations. Count IV alleges that Qualex terminated Lamb in retaliation for his request of reasonable accommodations. Count V alleges that Qualex terminated Lamb in violation of Virginia common law.

Qualex acknowledges that Lamb suffered from a disability. However, it maintains that

it is entitled to judgment as a matter of law on Counts I through IV because Lamb is not a qualified individual with a disability. Qualex further argues that Lamb's representations to the SSA estop him from now seeking protection as a qualified individual. Qualex argues that Count V is barred because recent legislative amendments have abrogated this cause of action.

### I. The ADA Claims

Each of Lamb's first four counts seeks relief under the ADA. To obtain relief under any of these Counts, a plaintiff must demonstrate as a threshold matter that he is a "qualified individual with a disability." *See* 42 U.S.C. S 12112; *see also Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346, 348 (4th Cir.1996); *Doe v. University of Maryland Medical Sys. Corp.,* 50 F.3d 1261, 1265 (4th Cir.1995). The ADA defines "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Tyndall v. Nat'l Educ. Centers, Inc.,* 31 F.3d 209, 213 (4th Cir.1994).

While Qualex concedes that Lamb suffers from a disability, it argues that his representations to the SSA and his inability to perform full-time work demonstrate that, as a matter of law, Lamb is not a "qualified individual" entitled to relief under the ADA. The Court agrees with Qualex on both issues and therefore grants Qualex summary judgment on Counts I through IV.

### A. Lamb's SSA Representations

■ Qualex argues that Lamb's representations to the SSA judicially estop him from now claiming to be a "qualified individual with a disability." Judicial estoppel is "an equitable doctrine that prevents a party who has successfully taken a position in one proceeding from taking the opposite position in a subsequent proceeding." *King v. Herbert J. Thomas Memorial Hosp.,* 159 F.3d 192 (4th Cir.1998). The application of judicial estoppel is appropriate when the prior proceeding is an SSA application for disability benefits. *See King,* 159 F.3d at 192 (estopping plaintiff who earlier claimed SSA disability from later advancing contrary position seeking relief under West Virginia age discrimination law).

The United States Court of Appeals for the Fourth Circuit requires that three elements be present to apply the doctrine: (1) The party to be estopped must be asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding; (2) the prior inconsistent position must have been accepted by the tribunal; and (3) the party to be estopped must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage. *See King,* 159 F.3d at 192; *Lowery v. Stovall,* 92 F.3d 219, 224 (4th Cir. 1996); *John S Clark Co. v. Faggert & Frieden, P.C.,* 65 F.3d 26, 29 (4th Cir.1995).

■ All three elements required to invoke judicial estoppel are present here. Lamb now claims to be a qualified individual with a disability capable of at least part-time work. He asserts a position that is factually incompatible with that taken in the prior SSA proceeding. His prior position was accepted by the SSA. The two directly contradictory positions are advanced for the purpose of gaining unfair advantage in proceedings governed by divergent standards. Lamb is therefore judicially estopped from now claiming to be a qualified individual with a disability.

Lamb claims that the *King* case is inapposite because the statute in that case did not require the employer to make reasonable accommodations as does the ADA. For three separate reasons, the Court finds this argument unpersuasive. First, the unequivocal and absolute nature of Lamb's representations to the SSA make clear that Lamb considered himself unable to work even with reasonable accommodations. He did not claim to be able to work part-time. Lamb applied for and received benefits for a total disability. He claimed to be simply "unable to work" and "unable to complete *all aspects of the job.*" (Emphasis added). He characterized his depression as "major and severe and ... affecting everything in my life." He

concluded by asserting that, again without qualification, "I am unable to work." Accordingly, the issue of reasonable accommodations is belied by the absolute and unequivocal nature of Lamb's representations to the SSA. Second, the Fourth Circuit has considered the doctrine of judicial estoppel in at least one ADA case. *See Cathcart v. Flagstar Corp.,* No 97–1977, 155 F.3d 558, 1998 WL 390834 (4th Cir.1998). Although it declined to apply the doctrine of judicial estoppel, its reason for doing so in that case was not that advanced here by Lamb, but instead due only to the fact that the SSA did not accept the plaintiff's claim to be totally disabled. Were Lamb's argument distinguishing the ADA on the basis of its requirement that employers make reasonable accommodations compelling, one might expect the Fourth Circuit to have relied on that ground as well. It did not. Finally, the Court finds compelling the reasoning expressed by those courts that have judicially estopped ADA plaintiffs from contradicting their earlier representations to the SSA. *See, e.g., Cleveland v. Policy Management Systems Corp.,* 120 F.3d 513 (5th Cir.1997).

The Court therefore holds that Lamb is judicially estopped from now claiming to be a qualified individual with a disability entitled to relief under the ADA. Accordingly, the Court grants defendant summary judgment on Counts I through IV.

### B. Part–Time Work as a Reasonable Accommodation

■ Although the disposition above moots the issue, the Court notes that Lamb would be barred from seeking relief under the ADA for the additional reason that no reasonable accommodation would allow him to perform the essential functions of his position. The "[p]laintiff bears the burden of demonstrating that [he] could perform the essential functions of [his] job . . . ." *Id.* (citation omitted). The essential functions of a job include "the fundamental job duties of the employment position," 29 C.F.R. Section 1630.2(n)(1), and those "that bear more than a marginal relationship to the job at issue." *Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1993). The ADA further requires that "consideration shall be given to the em-

ployer's judgment as to what functions of a job are essential . . . ." 42 U.S.C. Section 12111(8); *see also* 29 C.F.R. Section 1630.2(n)(3)(I).

■ If the plaintiff cannot perform these functions, the court next must decide whether a reasonable accommodation by the employer would have enabled the individual to do so. *Id.* The ADA requires only that employers adopt accommodations that are "reasonable." *See Myers v. Hose,* 50 F.3d 278, 283 (4th Cir.1995). If a plaintiff cannot perform the essential functions of his position with reasonable accommodations, then he is not entitled to relief under the ADA.

Lamb argues that his proposed return to work on a part-time basis represents a reasonable accommodation that would have allowed him to perform the essential functions of an ADS. The Court disagrees.

■ The ADA does not require that an employer create a position to accommodate a disabled employee. *See, e.g., Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1187 (6th Cir.1996). Qualex has introduced uncontroverted evidence that it hired two ADSs to service Lamb's territory after granting him disability leave and before receiving Lamb's request to return to work in a part-time position. No other part-time position was available. Qualex could only have satisfied Lamb's requested accommodation by creating a third ADS position within the territory. This is not a burden the ADA imposes.

■ Nor does the ADA require an employer to accommodate an employee when that accommodation would impose an undue hardship on the employer. *See* 42 U.S.C. § 12112(b)(5)(A); *School Board of Nassau County v. Arline,* 480 U.S. 273, 289 n. 17, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). An accommodation imposes an undue hardship if it requires elimination of an essential duty of the position in question. *Hall v. U.S. Postal Service,* 857 F.2d 1073, 1078 (6th Cir.1988). If full-time work is an essential duty of the position, the employer need not allow part-time work as an accommodation. *Millner v. Co-operative Savings Bank,* No. 97–1512, 151 F.3d 1029, 1998 WL 377931, (4th Cir.

1998); *Terrell v. USAir,* 132 F.3d 621, 624 (11th Cir.1998). Nor does the ADA require employers to wait indefinitely while an employee's health improves and less onerous accommodations become feasible. *Myers v. Hose,* 50 F.3d 278, 282–83 (4th Cir.1995).

█ Although Lamb may eventually recover and be able to work full-time, he was not able to do so at the time he requested an accommodation. Qualex has demonstrated that full-time availability is an essential duty of the ADS position. No ADS is employed on a part-time basis. ADSs must be available to respond to customer support needs as they arise. Qualex provides each ADS an automobile and computer to assist in their work. Accordingly, to require that Qualex accommodate employees by allowing part-time ADS work would not only threaten customer service and alter the employment pattern universally imposed within the company, it would also significantly increase expenses for the company by increasing the number of ADSs requiring automobiles and computers within a territory. The ADA does not require such accommodations.

Accordingly, and in addition to being barred by judicial estoppel as noted above, Lamb's ADA claims in Counts I through IV fail as a matter of law because was not a qualified individual with a disability.

### Lamb's State Law Claim

Count V of the Complaint alleges that Qualex wrongfully terminated Lamb in violation of the public policy expressed in the Virginians with Disabilities Act, Va.Code Ann. § 51.5–1 *et seq. See Bowman v. State Bank of Keysville,* 229 Va. 534, 331 S.E.2d 797 (1985). The Virginia Human Rights Act, Va.Code Ann. §§ 2.1–714 to 2.1–725, also expresses a public policy against discrimination because of disability. In 1995, the General Assembly amended the VHRA by limiting causes of action brought under the VHRA to those already afforded by other federal and state civil rights statutes. Since that time, the courts of this district have unanimously held that the VHRA and analogous state statutes no longer provide the public policy basis for a *Bowman* cause of action. *Williamson v. Virginia First Savings Bank,* 26 F.Supp.2d 798 (E.D.Va.1998); *Joyner v. Fil-*

*lion,* 17 F.Supp.2d 519 (E.D.Va.1998); *McCarthy v. Texas Instruments, Inc.,* 999 F.Supp. 823, 828 (E.D.Va.1998); *Leverton v. AlliedSignal, Inc.,* 991 F.Supp. 486, 490 n. 2 (E.D.Va.1998).

█ This Court now joins those cited above and holds that a state statute expressing a public policy also found in the VHRA does not provide an independent cause of action for adverse employment actions. Actions based on such statutes must be rooted in a federal or state statute that explicitly provides a cause of action. Accordingly, the Court grants defendant summary judgment on Lamb's state law claim in Count V.

An appropriate Order shall issue.

### *FINAL ORDER*

This matter is before the Court on defendant's motion for summary judgment. For the reasons stated in the accompanying Memorandum Opinion, defendant's motion for summary judgment is GRANTED on all Counts of plaintiff's complaint. This case is dismissed with prejudice.

It is so Ordered.