Kenneth M. LEMONS, Plaintiff,

v.

US AIR GROUP, INC.,
et al., Defendants.

No. 6:97CV00097.

United States District Court,
M.D. North Carolina.

Jan. 19, 1999.

Kenneth M. Lemons, Winston–Salem, NC, pro se.

Robert Rand Tucker, Kilpatrick Stockton, L.L.P., Winston–Salem, NC, for defendants.

## MEMORANDUM OPINION

BEATY, District Judge.

### I. INTRODUCTION

This matter is before the Court on Defendants US Air Group, Inc. ("US Air"), John Elrod, Lonnie Harrigal, Rena Hamrick, Donna Beck, Jimmy Speas, Judi

Brydges, Marty Havens, L.R. Welch, Joyce Greene, Darryl Wiles, and Todd Haywood's [1] Motion to Dismiss Plaintiff's Amended Complaint [Document # 22]. Plaintiff Kenneth M. Lemons ("Lemons") has filed a memorandum in opposition to the motion [Document # 25].[2] For the reasons stated herein, Defendants' motion is granted.

## II. FACTUAL BACKGROUND [3]

In 1985, Lemons was hired by Piedmont Airlines to work as a reservations agent. (Am.Compl.¶ 8.) In 1989, US Air purchased Piedmont Airlines, and Lemons remained employed in the same position. (*Id.*) This action arises out of the termination of Lemons's employment with US Air, which occurred on November 18, 1994. (*Id.*) A summary of the events leading up to Lemons's termination is as follows.

According to Lemons, he was first formally disciplined when a fellow employee complained that Lemons had called her "biggty" in December 1991. (Am. Compl.¶ 22.) He admitted doing so and was issued a written reprimand dated January 2, 1992. (*Id.;* Memo. in Supp. of Defs.' Mot. to Dismiss Pl.'s Am. Compl. at Ex. B.)

The next incident cited by Lemons occurred in March 1994. According to Lemons, he "had a customer that [he] could not get to understand the new rules . . . ." (Am. Compl.¶ 25.) While transferring the customer to a supervisor, Lemons stated:

"Let's all of us share this misery." (Id.) He received a verbal and written reprimand, dated March 4, 1994. (*Id.;* Memo. in Supp. of Defs.' Mot. to Dismiss Pl.'s Am. Compl. at Ex. C.)

Lemons's Amended Complaint also acknowledges that in June 1994 he "became very upset with [Defendant Donna Beck's] use of authority" and "was reckless in [his] comments" while addressing his concerns. (Am.Compl.¶ 26.) By memorandum dated June 16, 1994, he received a "final written warning" and was suspended for three days. (Memo. in Supp. of Defs.' Mot. to Dismiss Pl.'s Am. Compl. at Ex. E.)

In September 1994 Lemons requested and was granted a medical leave of absence. (Am.Compl.¶ 31.) He returned to work on October 26, 1994, under the direction of a new supervisor. (*Id.* at ¶ 36.)

On November 11, 1994, Lemons was taking a reservation from a "man in an accented voice . . . ." (*Id.* at ¶ 39.) According to Lemons, the caller made a one-day stay reservation, the man never mentioned the fare, and Lemons "could hear voices [in the background] making comments about 'making a delivery.' " (*Id.*) Based on these observations, Lemons felt that the "call was truly puzzling and troublesome . . . ." (*Id.*) As a result, he called the 911 emergency operator and reported the incident. (*Id.*) According to Lemons's version of events, a subsequent meeting with

1. All individual defendants have been sued in their official, as well as individual, capacities.

2. Lemons's memorandum is entitled "Plaintiff's Motion to Deny Defendants' Motion to Dismiss." For the purposes of this Order it will be referred to as Lemons's "Response."

3. Although this Court recognizes that, for the purposes of analyzing a motion to dismiss, a court must view the complaint in the light most favorable to a plaintiff, accepting as true all well-pleaded factual allegations, *Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994), *cert. denied,* 514 U.S. 1107, 115 S.Ct. 1956, 131 L.Ed.2d 849 (1995), this Court notes that the facts as set forth in Lemons's Amended

Complaint and Response are not well organized and often do not indicate the time period during which they allegedly occurred. As such, this Court will consider—for clarification purposes only—the facts as set forth by Defendants in their Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Document # 23]. In addition, Defendants have attached to their Memorandum certain exhibits referenced in Lemons's Amended Complaint. This Court will consider these exhibits solely for the purposes of clarifying the factual background. *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1327 (2d ed.1990).

management to discuss the incident quickly became argumentative:

> Rena Hamrick came to my position and told me that [Lonnie] Harrigal, wanted to see me in her office[.] I wondered why? When I entered[,] Jimmy Speas sat on the left side of the room and I faced [Lonnie] Harrigal sitting in front of her large oak desk, against the right wall facing [Jimmy] Speas[.] [Lonnie] Harrigal's tone of voice was both loud and accusatory, she demanded[,] "What do you mean calling the Winston–Salem police department? Don't you know we have our own security, why didn't you call a manager?" I told her that I didn't think that I had done anything wrong. Her tirade went on and on and on; she was repeating the same thing over and over again. Finally I had taken all that I could take over such a trivial matter. I rose up in my chair, faced her, pointing my finger, and said "You have said the same thing over and over again. I get your point, I am not a child and you are not my parent," [sic] I went on to say [that] as an agent, I had never had any training on how to deal with this type of situation, and in fact we never had even discussed the scenario. There had been no memos, handouts, or any official policy statement that I had ever received regarding the topic, although we had extensive training in "bomb threats". By this time, my reasoning had overcome my emotions, and I looked at them in their very smug postures....

(*Id.* at ¶ 41.) Lemons also alleges that on November 11, 1994, *The Greensboro Daily News* published a letter to the editor which he voluntarily wrote. (*Id.* at 42; Resp. at Ex. G.) Among other things, the letter criticized US Air management. (*Id.*) On November 18, 1994, US Air terminated Lemons's employment on the basis of Lemons's record of inappropriate conduct, culminating with the November 11, 1994, incident cited above involving Lonnie Harrigal. (Am.Compl. ¶¶ 43–44; Memo. in Supp. of Defs.' Mot. to Dismiss Pl.'s Am. Compl. at Ex. P.)

On January 13, 1995, Lemons alleges that he filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (Am.Compl.¶¶ 5, 46.) On October 31, 1996, the EEOC issued a right-to-sue letter. (*Id.* at ¶ 6.) Lemons received the letter on November 3, 1996. (*Id.*) On January 30, 1997, and February 3, 1997, Lemons filed his Complaint and Amended Complaint, respectively, against Defendants, setting forth various causes of action in connection with his discharge. On April 4, 1997, Defendants filed the motion now before this Court, requesting this Court to "dismiss [Lemons]'s amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that [his] claims are without merit on the face of the amended complaint." (Memo. in Supp. of Defs.' Mot. to Dismiss Pl.'s Am. Compl. at 1.)

## III. STANDARD OF REVIEW

With respect to a motion to dismiss for failure to state a claim upon which relief can be granted, dismissals are allowed only in very limited circumstances. *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir.1989). Generally, a court should not dismiss a complaint for failure to state a claim "unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied*, 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994). In making this determination, a court must view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1956, ·131 L.Ed.2d 849 (1995). Moreover, when a plaintiff appears in a case pro se, such as Plaintiff here, the complaint is to be judged by "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92

S.Ct. 594, 30 L.Ed.2d 652, 654, *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972).

## IV. DISCUSSION

A close review of Lemons's filings reveals he has attempted to allege five federal and five state causes of action. This Court will analyze each federal claim and will then collectively address the state law claims.

### A. *Title VII of the Civil Rights Act of 1964*

Lemons first alleges that Defendants have engaged in conduct in violation of Title VII of the Civil Rights Act of 1964. (Am.Compl.¶ 53.) Specifically, he alleges that Defendants "have pursued a course of disability discrimination, harassment, coercion, threats, surveillance, and unlawful retaliation for filing a claim with the EEOC and identifying discriminatory actions and nepotism in the work place." (*Id.* at ¶ 50.) In addition, he contends that Defendants "imposed upon ... [him] less favorable conditions of employment and a lack of any form of accommodation afforded other employees with less disability." (*Id.*) Lemons therefore contends that he is entitled to relief based upon a violation of Title VII of the Civil Rights Act of 1964.

On the other hand, Defendants contend that, since Title VII does not apply to discrimination based on disability, Lemons's claim should be dismissed. (Memo. in Supp. of Defs.' Mot. to Dismiss Pl.'s Am. Compl. at 7.) Title VII of the Civil Rights Act of 1994 makes it unlawful "for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (1994). However, "Title VII is not a 'bad acts' statute." *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989). Only discrimination based on Title VII's enumerated categories will support a claim

under that statute. *See id.* at 825–26; *see also Balazs v. Liebenthal*, 32 F.3d 151 (4th Cir.1994). Here, Lemons does not allege in his Amended Complaint that he was treated negatively as result of his race, color, religion, sex, or national origin. Lemons also fails to address in his Response Defendants' specific legal argument on the Title VII issue. Rather, Lemons's Title VII cause of action is based solely on an allegation of "disability" discrimination. (Am.Compl.¶ 50.) As such, as the Defendants have alleged, this Court finds that Lemons has failed to state a claim under Title VII for which relief may be granted and, therefore, his first cause of action is hereby dismissed.

### B. *42 U.S.C. § 1983*

Lemons next alleges that Defendants actions were "in direct violation of 42 U.S.C. § 1983." (*Id.* at ¶ 57.) Specifically, he claims that "Defendants, acting under the color of federal and state laws, subjected [him] to the deprivation of his rights, privileges, and immunities secured by the United States [C]onstitution and laws while [US Air] took minimal response to [his] complaints under its EEOC policy." (*Id.* at ¶ 56.) Defendants argue that Lemons's claim should be dismissed because he "fails to assert any connection whatsoever between [D]efendants and any conceivable state action." (Memo. in Supp. of Defs.' Mot. to Dismiss Pl.'s Am. Compl. at 7–8.)

Section 1983 provides that

[e]very person, who under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Liability under Section 1983 only extends to individuals acting under color of law, a requirement equivalent

to that of state action under the Fourteenth Amendment. *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418, 425–26 (1982). Thus, conduct is only actionable under Section 1983 when it is "'fairly attributable to the state.'" *United Auto Workers v. Gaston Festivals, Inc.,* 43 F.3d 902 (4th Cir.1995) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482, 495 (1982)). With respect to pleading requirements, "[c]onclusory allegations that [a party] acted under color of state law will not suffice." *Wolfe v. Bias,* 601 F.Supp. 426 (S.D.W.Va.1984) (citing *District 28, United Mine Workers of America v. Wellmore Coal Corp.,* 609 F.2d 1083, 1086 (4th Cir.1979)).

■ Here, Lemons has failed to allege in his Amended Complaint any facts which would support his contention that Defendants acted "under the color of federal and state laws," in terms of state action. Lemons has also not attempted to further explain this conclusory allegation in his Response. Accordingly, this Court finds that Lemons has not alleged facts sufficient to maintain a claim under Section 1983 and, therefore, his second cause of action based upon Section 1983 is hereby dismissed.

#### C. *42 U.S.C. § 1981*

Lemons also alleges that Defendants acted in violation of the provisions of 42 U.S.C. § 1981. (Am.Compl.¶¶ 55–58.)[4] Defendants contend that Lemons's claim should be dismissed because Section 1981 only prohibits discrimination based on race. (Memo. in Supp. of Defs.' Mot. to Dismiss Pl.'s Am.Compl. at 8.)

■ Section 1981 prohibits discrimination on the basis of race. 42 U.S.C. § 1981; *see also St. Francis College v. Al–Khazraji,* 481 U.S. 604, 609, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). As such, in order to state a claim under Section 1981, a plaintiff must at least allege that he was the victim of racial discrimination. Here, Lemons has failed to allege any facts that would indicate that Defendants treated him negatively because of his race. Lemons has also failed to include any allegations of racial discrimination in his Response. As such, this Court finds that Lemons has failed to state a claim for relief under Section 1981 and, therefore, his cause of action is hereby dismissed.

#### D. *Americans with Disabilities Act*

Lemons further alleges that Defendants discriminated against him in violation of the provisions of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. (Am.Compl.¶¶ 55–58.) This Court notes that Lemons includes the ADA in the caption below his "second claim for relief" but fails to cite that statute in the accompanying cause of action paragraphs. He does, however, reference the ADA elsewhere in his Amended Complaint. (*Id.* ¶ 32.) This Court will accept Lemons's pleading for the purposes of Defendants' motion as properly identifying the ADA as one basis for his claims.

Defendants contend that Lemons has failed to state such an ADA claim for which relief can be granted because (1) Lemons is judicially estopped from both collecting disability benefits and from asserting an ADA claim and (2) Lemons's allegations refute any contention that he

---

4. Lemons includes 42 U.S.C. § 1981 in the caption below his "second claim for relief" but fails to cite that statute in the accompanying cause of action paragraphs. This Court will assume for the purposes of Defendants' motion that Lemons has properly identified 42 U.S.C. § 1981 as the basis for one of his claims.

   Section 1981, in pertinent part, provides as follows:

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

was fired solely on the basis of his disability. (Memo. in Supp. of Defs.' Mot. to Dismiss Pl.'s Am.Compl. at 10–11.)

In addition, Defendants argue that Lemons fails to properly state an ADA retaliation claim because he also admits insubordinate conduct in his Amended Complaint. (*Id.* at 11–12.) Despite the fact that Lemons has not set forth his specific claims under the ADA, this Court will—in light of the fact that he is proceeding *pro se* — review his Amended Complaint to determine whether he has properly alleged an ADA discrimination claim and an ADA retaliation claim.

### 1. *Discrimination claim*

In order to properly state a claim of disability discrimination under the ADA, a plaintiff must allege that he (1) has a disability, (2) is otherwise qualified for the employment in question, and (3) was discharged from his employment solely on the basis of the disability. *See Doe v. University of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1264–65 (4th Cir.1995) (citing *Gates v. Rowland,* 39 F.3d 1439, 1445 (9th Cir. 1994)). However, Defendants contend that, since Lemons also alleges in support of his ADA claim that (1) he was granted disability benefits and (2) the Social Security Administration ruled that he was disabled as of a date prior to his termination, (Am.Compl.¶ 49), he should be judicially estopped from now bringing a claim under the ADA. (Memo. in Supp. of Defs.' Mot. to Dismiss Pl.'s Am.Compl. at 9–10.) Although Lemons's pleading may be read as adequately stating an ADA discrimination claim, for the reasons set forth below this Court·agrees with Defendants' contention that judicial estoppel should apply in this situation.[5]

Judicial estoppel is an equitable doctrine which prevents a party from successfully taking a particular position in one proceeding and then taking the opposite position in a subsequent proceeding. *King v. Herbert J. Thomas Mem. Hosp.,* 159 F.3d 192, 196 (4th Cir.1998). Its purpose is "to protect the integrity of the judicial system." *See Lowery v. Stovall,* 92 F.3d 219, 223 (4th Cir.1996). In order for judicial estoppel to apply, the following elements must be present: (1) the party must be asserting a position factually inconsistent with a position taken in a prior proceeding, (2) the prior inconsistent position must have been accepted by the tribunal, and (3) the party must have taken inconsistent positions intentionally, for the purpose of gaining an unfair advantage. *King,* 159 F.3d at 196.

Here, Lemons acknowledges applying for and receiving disability benefits from the Social Security Administration

---

5. A close review of Lemons's entire Amended Complaint reveals that he does, indeed, sufficiently allege these three elements. First, throughout his pleading he refers to himself as "disabled" or "handicapped." For example, when describing himself as a party to the litigation, he was "employed as a 'handicapped' employee with both emotional and physical problems...." (Am.Compl.¶ 8.) In addition, Lemons alleges that he "was hired as a handicapped individual and had received treatment for his bi-polar condition ... while a student.... " (*Id.* at ¶ 27.) Moreover, he alleges that he received notes and letters from doctors which "spelled out clearly the mental and physical problems such as high blood pressure, migraines, cramps, depression, and overwhelming feeling of fatigue." (*Id.*) Second, in several paragraphs he at least alleges that he is otherwise qualified for his employ-

ment. (*Eg., id.* at ¶¶ 8, 28, 32, 36, 38.) For example, Lemons's Amended Complaint contains the following factual allegation:

> The Plaintiff never received less than an average to a superlative job evaluation for his work performance. During the almost ten years of tenure, he received more than fifty complimentary letters from passengers. Management could not sack him on his job performance, job expertise, politeness, efficiency, command of the conversation, and better than average sales performance.

(Am.Compl.¶ 28.) He also plainly alleges that he "was otherwise a qualified individual with a disability...." (*Id.* at ¶ 32.) Third, Lemons plainly alleges that Defendants "terminated [him] solely based upon ... [D]efendants [sic] desire to rid themselves of a disabled employee...." (*Id.*)

("SSA"), and that the SSA "ruled that [he] qualified as a 'disabled person'" prior to his termination. (Am.Compl.¶ 49.) By applying successfully for such benefits, the first two elements of judicial estoppel are necessarily present because the SSA will not disburse benefits unless it accepts the factual assertions made by the applicant indicating an "inability to engage in substantial gainful activity by reason of any medically determinable physical impairment...." 42 U.S.C. § 423(d)(1)(A) (defining "disability"); *King*, 159 F.3d at 197. Specifically with respect to the first element of judicial estoppel, Lemons was required pursuant to the Social Security laws to "furnish ... medical and other evidence of the existence" of a disability to the SSA. 42 U.S.C. § 423(d)(5)(A).

As to whether the third element of judicial estoppel is present, Lemons's own allegations indicate that his application to the SSA, and his assertions made in connection with that application, were intentional. (Am.Compl. ¶ 49 ("I applied for Social Security [b]enefits and was granted benefits upon my first application. This is an exception and not the general rule (only one in six applicants get benefits upon first application).").) By first representing, as part of his SSA claim, that he was unable to engage in substantial gainful activity and by now seeking to establish, as part of his ADA discrimination claim, that he is able to perform his duties, Lemons is asserting two inconsistent positions "for the purpose of gaining unfair advantage in proceedings governed by divergent standards." *Lamb v. Qualex, Inc.*, 28 F.Supp.2d 374, 376 (E.D.Va.1998). Accordingly, this Court concludes that Lemons is judicially estopped from bringing a claim of disability discrimination under the ADA in the present litigation.

This Court acknowledges, however, that the question of judicial estoppel in the context of an application for SSA benefits followed by the filing of an ADA claim has resulted in conflicting rulings among the various courts of appeals. Some circuits have held that claiming a disability for the purposes of receiving particular benefits does not preclude subsequent causes of action of disability discrimination under the ADA. *See, e.g., Weigel v. Target Stores*, 122 F.3d 461 (7th Cir.1997); *Swanks v. Washington Metro., Area Transit Auth.*, 116 F.3d 582 (D.C.Cir.1997). The rationale behind these rulings is that the definition of "disability" under the Social Security Act and the ADA are not synonymous in that Social Security determinations of disability do not take into account the availability of reasonable accommodations. *See, e.g., Swanks*, 116 F.3d at 584–587. At least one court of appeals, however, has explicitly approved of judicial estoppel in the ADA context, *see, e.g., McNemar v. Disney Store, Inc.*, 91 F.3d 610 (3d Cir. 1996), *cert. denied*, 519 U.S. 1115, 117 S.Ct. 958, 136 L.Ed.2d 845 (1997), and another has held that the receipt of social security disability benefits at the very least creates a rebuttable presumption of judicial estoppel, *Cleveland v. Policy Management Sys. Corp.*, 120 F.3d 513 (5th Cir.1997), *cert. granted*, —— U.S. ——, 119 S.Ct. 39, 142 L.Ed.2d 30 (1998).

Although the Fourth Circuit in *King* approved of judicial estoppel, this Court recognizes that that case involved a subsequent age discrimination claim under the West Virginia Human Rights Act, a statute that, unlike the ADA, does not require that employers make reasonable accommodations. Nonetheless, the facts of *King* are closely analogous to the instant action. In *King*, the plaintiff was asserting for the purposes of her age discrimination claim a factual position that was inconsistent with her prior representations to the SSA. First, she took the position before the SSA that she was "physically unable to do her ... job...." *King*, 159 F.3d at 197. Second, she attempted to establish a claim of age discrimination under the West Virginia Human Rights Act, a law that requires plaintiffs to prove that they are "able and competent to perform the services required" of their employment. W.Va.Code

§ 5–11–9(1). Therefore, the elements of judicial estoppel were present and the Fourth Circuit affirmed the district court decision to judicially estop King from bringing her age discrimination claim.

Although the Fourth Circuit has yet to expressly approve of judicial estoppel when the subsequent claim is made pursuant to the ADA, as opposed to when the subsequent claim is age discrimination under the West Virginia Human Rights Act as in *King*, it did at least review such a scenario in *Cathcart v. Flagstar Corp.*, 155 F.3d 558, 1998 WL 390834 (4th Cir.1998), an unpublished decision that this Court uses for illustrative purposes. In ruling that the district court did not abuse its discretion when it decided not to apply judicial estoppel, the Fourth Circuit in *Cathcart* reasoned that, even if the plaintiff's prior SSA assertions were inconsistent with those made for the purposes of her ADA claim, the second element of the judicial estoppel doctrine was not present because the SSA did not accept the plaintiff's assertion of disability. Therefore, it concluded, the district court was correct when ruling that judicial estoppel did not bar the plaintiff's claim. Notably, however, the Fourth Circuit did not state that judicial estoppel could never be invoked in situations where one position is asserted before the SSA and a contrary one is made in connection with an ADA claim. As one district court within the Fourth Circuit has noted,

> [a]lthough [the Fourth Circuit in *Cathcart* ] declined to apply the doctrine of judicial estoppel, its reason for doing so in that case was not [because of the reasonable accommodation distinction], but instead due only to the fact that the SSA did not accept the plaintiff's claim to be totally disabled. Were ... the argument distinguishing the ADA on the basis of its requirement that employers make reasonable accommodations compelling, one might expect the Fourth Circuit to have relied on that ground as well. It did not.

*Lamb*, 28 F.Supp.2d at 376. Moreover, other district courts within the Fourth Circuit which have considered the issue have held that such plaintiffs are judicially estopped. *Id.; Hindman v. Greenville Hosp. Sys.*, 947 F.Supp. 215 (D.S.C.1996), *aff'd*, 133 F.3d 915 (4th Cir.1997) (declining to address the issue of judicial estoppel); *Reigel v. Kaiser Found., Health Plan of N.C.*, 859 F.Supp. 963 (E.D.N.C.1994). For these reasons, this Court finds judicial estoppel appropriate in this instance and, as such, Lemons cannot properly state a claim for disability discrimination. Accordingly, his ADA discrimination cause of action is hereby dismissed.

### 2. Retaliation claim

■ To state a claim of retaliation under the ADA, a plaintiff must allege that (1) he engaged in protected activity, (2) his employer took adverse employment action against him, and (3) a causal connection existed between the protected activity and the adverse action. *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir.1991) (citing *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985)).

■ Based upon a careful review of Lemons's pleadings, this Court finds that he fails to properly state all of the elements to support a claim for retaliation. Lemons's Amended Complaint can be read to adequately state that he engaged in protected activity, to wit, the filing of a complaint with the EEOC. (Am.Compl.¶ 4.) In addition, it may also be read to adequately allege adverse employment action, to wit, the termination of his employment. (*Id.* at ¶ 43.) However, Lemons fails to properly allege a causal connection between his EEOC filing and his termination. As a result of the EEOC filing, Lemons merely alleges that Defendants began directing "agents to write false statements with outrageous ideas" about him. (*Id.* at ¶ 57.) He fails, however, to allege how those alleged false statements resulted in his termination. Thus, Lemons has failed to properly allege the third re-

quirement of a retaliation claim, that is, a causal connection between the protected activity and the adverse employment action. As such, this Court concludes that Lemons has failed to properly state a claim for retaliation under the ADA and his cause of action is hereby dismissed.

### E. *State Law Claims*

■ Lemons alleges that Defendants' alleged conduct violated North Carolina's Equal Employment Practices Act ("EEPA"), N.C.Gen.Stat. § 143–422.1 *et seq.*, and also constituted negligent and intentional infliction of emotional distress, defamation, and malicious interference with contractual relations. These claims are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367 because they are part of the same case or controversy as the federal law claims discussed above. However, this Court has granted Defendants' Motion to Dismiss Plaintiff's Amended Complaint as to all of Lemons's federal law causes of action. Because this Court has dismissed all claims over which it has original jurisdiction, and because the remaining claims present issues of state law, this Court declines to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367. The merits of Lemons's state law claims would be more appropriately determined outside of the federal court system. Accordingly, these claims are dismissed without prejudice to Lemons timely refiling any state law claims he may have in the appropriate forum.

## V. CONCLUSION

For the foregoing reasons, this Court concludes that Defendants US Air, John Elrod, Lonnie Harrigal, Rena Hamrick, Donna Beck, Jimmy Speas, Judi Brydges, Marty Havens, L.R. Welch, Joyce Greene, Darryl Wiles, and Todd Haywood's Motion to Dismiss Plaintiff's Amended Complaint is granted as to Lemons's claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, 42 U.S.C. § 1981, and the Americans with Disabilities Act, and, therefore, those claims are hereby dismissed with prejudice.

This Court further concludes that, since Lemons's remaining causes of action are pursuant to state law and this Court hereby has dismissed all of his federal claims, this Court declines to exercise supplemental jurisdiction and Lemons's state claims are dismissed without prejudice.